# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | |
|---|---|
| LJUBOMIR PANTELIC Individually and for Others Similarly Situated,<br><br>v.<br><br>NATIONAL HOOD EXHAUST & FIRE GROUP, LLC f/k/a APEX HOOD EXHAUST & FIRE GROUP, LLC; and BRYAN PAINTER | Case No. 2:21-cv-1371<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br><br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Ljubomir Pantelic (Pantelic) brings this Fair Labor Standards Act (FLSA) collective action and class action under the Pennsylvania Minimum Wage Act (PMWA) and Pennsylvania Wage Payment and Collection Law ("PWPCL") to recover unpaid wages and other damages from National Hood Exhaust & Fire Group, LLC f/k/a Apex Hood Exhaust & Fire Group, LLC, and Bryan Painter (Painter) (collectively, National Hood).

2.      National Hood employed Pantelic and the Putative Class Members (defined below) as hourly employees.

3.      Pantelic and the Putative Class Members regularly worked more than 40 hours a week.

4.      But despite having been sued in the past for failing to pay overtime as required by law, National Hood did not pay Pantelic and the Putative Class Members overtime.

5.      Instead, National Hood paid Pantelic and the Putative Class members the same hourly rate for all hours worked, including those hours over 40 in a week (or, "Straight Time for Overtime").

6.      National Hood also failed to pay for certain compensable hours altogether, improperly reducing the number of regular and overtime hours it paid Pantelic and the Putative Class Members.

7.      Pantelic brings this collective action to recover unpaid wages, including unpaid overtime wages, and other damages National Hood owes to these workers.

## JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9.      The Court also has original jurisdiction pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

10.     The Court has supplemental jurisdiction over any state law sub-class(es) pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

12.     National Hood Exhaust & Fire Group, LLC f/k/a Apex Hood Exhaust & Fire Group, LLC is a Pennsylvania limited liability company with a registered office at 615 Penn Avenue, New Brighton, Pennsylvania 15066, which is within the venue and jurisdiction of this court.

13.     National Hood performs services throughout Pennsylvania and parts of Ohio and West Virginia.[1]

14.     Bryan Painter is, and at all relevant times was, the owner of National Hood & Fire Company, LLC fka Apex Hood Exhaust & Fire Company, LLC, and resides at 225 Thomas School Road, Greensburg, Pennsylvania, 15601, which is within the venue and jurisdiction of this court.

15.     Painter does, and at all relevant times did, business in New Brighton, Pennsylvania as he has overseen the daily operations of the business located at 615 Penn Avenue, New Brighton, Pennsylvania 15066, which is within the venue and jurisdiction of this Court. Painter has been actively

---

[1] National Hood Exhaust Service Areas, http://www.nationalhoodandfire.com/ (last visited October 5, 2021).

involved in the day-to-day operations of the company.

16.     Painter directed employment practices and directly or indirectly acted in the interest of National Hood in relation to its employees at all times relevant herein, including hiring, scheduling, setting rates of pay, setting employees' conditions of employment, and daily supervision of employees.

17.     Painter has acted directly or indirectly in the interest of the company in relation to their employees at all relevant times, and was an employer of Pantelic and the Putative Class Members.

PARTIES

18.     Pantelic was an hourly employee of National Hood.

19.     Throughout his employment, National Hood paid Pantelic the same hourly rate for all hours worked, including those worked in excess of 40 hours in a single workweek.

20.     In addition, National Hood excluded certain compensable hours Pantelic and the Putative Class Members worked from the hours National Hood used to calculate its workers' pay, improperly reducing the number of weekly regular and overtime hours it paid Pantelic and the Putative Class Members.

21.     Pantelic's written consent is attached as Exhibit A.

22.     National Hood employed Pantelic and those similarly situated to him.

23.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All hourly employees of National Hood employed at any time in the last 3 years in the past three years (FLSA Class Members).**

24.     Pantelic also seeks certification of a class under Fed. R. Civ. P. 23 defined as follows:

> **All hourly employees of National Hood employed in and/or were based out of Pennsylvania at any time in the past 3 years (Pennsylvania Class Members).**

25.     The FLSA Class Members and Pennsylvania Class Members are collective referred to as the Putative Class Members.

26.     National Hood Exhaust & Fire Group, LLC may be served with process by serving it at its registered address of 615 Penn Ave, New Brighton, PA 15066.

27.     Bryan Painter may be served with process at his residence at 225 Thomas School Road, Greensburg, Pennsylvania, 15601.

## FLSA COVERAGE

28.     At all relevant times, National Hood was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29.     At all relevant times, National Hood was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

30.     At all relevant times, National Hood was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials — such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment — that have been moved in or produced for commerce.

31.     At all relevant times, National Hood has had an annual gross volume of sales made or business done of not less than $500,000.

32.     At all relevant times, Pantelic and the Putative Class Members (defined below) were engaged in commerce or in the production of goods for commerce.

## THE FACTS

33.     National Hood is in the business of commercial kitchen maintenance and provides a variety of commercial and residential exhaust hood cleaning and fire protection services.[2]

---

[2] http://www.nationalhoodandfire.com/ (last visited October 5, 2021).

34.     To perform its business, National Hood employs hourly employees to perform a variety of services, including, for example, cleaners, drivers, laborers, and field technicians.

35.     Pantelic was an hourly employee of National Hood.

36.     Pantelic worked for National Hood in and around Pennsylvania.

37.     Pantelic worked for National Hood as an hourly employee from March 2021 to July 2021.

38.     Pantelic performed a variety of duties for National Hood, including welding, cleaning, and repairing kitchens, and loading, unloading, and driving vans.

39.     Before and after each shift, Pantelic loaded and unloaded the work vehicles.

40.     National Hood did not pay Pantelic for the time spent loading and unloading the work vehicles, forcing him to work off-the-clock (that is, without pay).

41.     Pantelic typically worked at 10-12 hours a workday.

42.     Pantelic regularly worked 50-75, or more, hours per week.

43.     Pantelic reported the hours he worked to National Hood.

44.     Though Pantelic reported all his hours to National Hood, the company refused to count the hours Pantelic spent loading and unloading work vehicles as compensable hours and refused to pay Pantelic for those hours.

45.     Because National Hood refused to count these hours as compensable, National Hood consistently failed to properly pay Pantelic at his regular rate for all hours worked up to 40 and at one and one half his regular rate for all hour worked over 40 in a workweek, in violation of the FLSA and PMWA.

46.     National Hood uniformly applied its illegal policy of excluding this pre- and post-shift time from compensation to Pantelic and the Putative Class Members.

47.     Throughout his employment, National Hood paid Pantelic the same hourly rate for all the hours it paid him for, including those in excess of 40 in a workweek.

48.     National Hood paid Pantelic and the Putative Class Members under its straight time for overtime pay scheme.

49.     Pantelic's and the Putative Class Members' job duties were routine and governed by National Hood's policies and procedures.

50.     Pantelic and the Putative Class Members were paid hourly.

51.     Pantelic and the Putative Class Members were not paid on a salary basis.

52.     Pantelic and the Putative Class Members' job duties made them non-exempt from the FLSA's and PMWA's requirements.

53.     National Hood did not pay Pantelic and the Putative Class Members at their regular rate for all hours worked up to 40 in a workweek.

54.     National Hood did not compensate Pantelic and the Putative Class Members at time and a half for any, let alone all, hours worked over 40 in a workweek.

55.     National Hood's pay practices violate the FLSA, PMWA, and PWPCL.

56.     National Hood knew its Straight Time for Overtime pay practice violated the FLSA.

57.     In 2018, the Department of Labor ("DOL") sued National Hood for violating the FLSA. See *U.S. Dept. of Labor v. Apex Hood Exhaust and Fire Group, LLC*, No. 2:18-cv-1611 (W.D. Pa. 2018) (the "DOL Lawsuit").

58.     The DOL sued National Hood for its illegal straight time for overtime policy.

59.     Consent Judgment was entered against National Hood as a result of its illegal straight time for overtime pay practice, which violated the FLSA. *See* DOL Lawsuit, Consent Judgment (Doc. 36).

60.     National Hood was ordered to pay back wages and liquidated damages to its employees who were victims of National Hood's illegal straight time for overtime policy. *See* DOL Lawsuit, Consent Judgment (Doc. 36).

61.     National Hood was enjoined from violating the FLSA in any manner, specifically including violation of the FLSA's requirement to pay employees one and one-half times their regular rates for all hours worked over 40 in a single workweek. *See* DOL Lawsuit, Consent Judgment (Doc. 36).

62.     National Hood knew the FLSA requires it to pay its employees one and one-half times their regular rate for all hours worked over 40 in a single workweek.

63.     National Hood knew its straight time for overtime policy violated the FLSA.

64.     National Hood willfully violated the FLSA by continuing to subject employees to its illegal straight time for overtime policy.

65.     National Hood willfully violated the FLSA by not paying Pantelic and the Putative Class Members time and a half for all hours worked over 40 in a workweek.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

66.     National Hood's illegal straight time for overtime policy, as well of its policy of excluding pre- and post-shift hours worked from compensable hours, extends beyond Pantelic.

67.     National Hood did not pay Pantelic and the Putative Class Members for all hours worked up to 40 in a workweek.

68.     National Hood did not pay Pantelic and the Putative Class Members time and a half for all hours worked over 40 in a workweek.

69.     National Hood paid numerous other hourly employees according to the same unlawful schemes.

70.     Any differences in job duties do not detract from the fact that these hourly workers were entitled to regular pay for all hours worked up to 40 in a workweek, and overtime pay for all hours worked above 40 in a workweek

71.     Pantelic incorporates all previous paragraphs and alleges that the illegal pay practices National Hood imposed on Pantelic were likewise imposed on the Putative Class Members.

72.     Dozens of other hourly employees were victimized by National Hood's patterns, practices, and policies, which are in willful violation of the FLSA, PMWA, and PWPCL.

73.     Dozens of Putative Class Members were employed in and/or based out of Pennsylvania within the past 3 years.

74.     Numerous other individuals, like Pantelic, indicated they were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA, PMWA, and PWPCL.

75.     Based on his experiences and tenure with National Hood, Pantelic knows National Hood's illegal practices were imposed on the Putative Class Members.

76.     The Putative Class Members were all paid straight time for overtime and not paid overtime when they worked more than 40 hours in a week.

77.     The Putative Class Members were all forced to work off the clock and not compensated for all hours worked.

78.     National Hood's failure to pay wages and overtime compensation at the rates required by the FLSA, PMWA, and PWPCL. for all hours worked results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

79.     The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

80.     Pantelic has no interest contrary to, or in conflict with, the Putative Class Members.

81.     Like each Putative Class Member, Pantelic has an interest in obtaining the unpaid wages and overtime wages owed to them under state and/or federal law.

82.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

83.     Absent this class and collective action, many Putative Class Members likely will not obtain redress of their injuries, and National Hood will reap the unjust benefits of violating the FLSA and applicable state labor laws, including the PMWA and PWPCL.

84.     Furthermore, even if some of the Putative Class Members could afford individual litigation against National Hood, it would be unduly burdensome to the judicial system.

85.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

86.     The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members.

87.     Among the common questions of law and fact are:

a.     Whether National Hood employed the Putative Class Members within the meaning of the FLSA, PMWA, and PWPCL;

b.     Whether the Putative Class Members were improperly misclassified as exempt from overtime pay under the FLSA;

c.     Whether National Hood's decision to classify the Putative Class Members as exempt from overtime pay was made in good faith;

d.     Whether National Hood's decision to not pay the Putative Class Members for all hours worked was made in good faith.

9

e.    Whether National Hood's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

f.    Whether National Hood's violation of the FLSA and PMWA was willful; and

g.    Whether National Hood's illegal pay practices were applied uniformly to all Putative Class Members.

88.    Pantelic's claims are typical of the claims of the Putative Class Members.

89.    Pantelic and the Putative Class Members sustained damages arising out of National Hood's illegal and uniform employment policy.

90.    Pantelic knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

91.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts; therefore, this issue does not preclude collective action treatment.

## CAUSE OF ACTION — VIOLATION OF THE FLSA

92.    Pantelic brings his FLSA claims as a collective action under 29 U.S.C. § 126(b).

93.    National Hood employed, or employs, Pantelic and the FLSA Class Members within the meaning of the FLSA.

94.    By failing to pay Pantelic and the FLSA Class Members for all hours worked at their regular rate and for failing to pay overtime at 1.5 times their regular rates when they worked in excess of 40 hours in a workweek, National Hood has violated, and is violating, Section 7 of the FLSA. 29 U.S.C. § 207.

95.    National Hood failed to pay Pantelic and the FLSA Class Members a guaranteed salary or on a "salary basis."

10

96.     National Hood failed to pay Pantelic and the FLSA Class Members overtime at the rates required by the FLSA.

97.     Instead, National Hood paid Pantelic and the FLSA Class Members straight time for overtime.

98.     National Hood also failed to compensate Pantelic and the FLSA Class Members for all hours worked.

99.     National Hood owes Pantelic and the FLSA Class Members compensation at their regular rates for all off-the-clock work performed up to 40 hours per week.

100.     National Hood owes Pantelic and the FLSA Class Members compensation at one and one-half times their regular rates for all off-the-clock work performed over 40 hours per week.

101.     For hours worked over 40 in a single workweek which National Hood paid Straight Time for Overtime, National Hood owes Pantelic and the FLSA Class Members the difference between the rate paid to them and the proper overtime rate.

102.     National Hood knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Pantelic and the FLSA Class Members overtime compensation.

103.     Because National Hood knew or showed reckless disregard for whether its pay practices violated the FLSA, National Hood owes these wages for at least the past three years.

104.     National Hood's failure to pay properly compensate these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

105.     The workers impacted by National Hood's illegal compensation scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

106.     Pantelic and the FLSA Class Members are entitled to unpaid wages at their regular rate of pay and overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorneys' fees and costs.

107.     By failing to pay Pantelic and the FLSA Class Members their regular rates for all hours up to 40 in a workweek, National Hood violated the FLSA's provisions.

108.     By failing to pay Pantelic and the FLSA Class Members their overtime at one and one-half times their regular rates for all hours over 40 in a workweek, National Hood violated the FLSA's overtime provisions.

109.     National Hood is liable to Pantelic and the Putative Class Members for an amount equal to all unpaid wages as liquidated damages.

110.     Pantelic and the Putative Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**CAUSE OF ACTION — Violation of Pennsylvania Wage Laws
43 P.S. §§ 260.1 *et seq.* and 333.101 *et seq.***

111.     Pantelic brings this claim under the PMWA and PWPCL as a Rule 23 class action.

112.     National Hood is subject to the overtime requirements of the PMWA because National Hood is an employer under 43 P.S. § 333.103(g).

113.     During all relevant times, Pantelic and the Pennsylvania Class were covered employees entitled to the above-described PMWA's protections.  43 P.S. § 333.103(h).

114.     National Hood's compensation scheme that is applicable to Pantelic and the Pennsylvania Class Members failed to comply with either 43 P.S. § 333.104(c) or 34 Pa. Code § 231.43(b).

115.     At all relevant times, National Hood was subject to the requirements of the PMWA.

116.     At all relevant times, National Hood was subject to the requirements of the PWPCL.

117.     At all relevant times, National Hood employed Pantelic and each Pennsylvania Class Member as an "employee" within the meaning of the PMWA and PWPCL.

118. The PMWA and PWPCL require employers like National Hood to pay employees their regular rate for all hours worked up to 40 in a workweek, and one and a half times the regular rate for hours worked in excess of 40 hours in any one week.

119. National Hood violated the PWPCL by failing to pay Pantelic and each Pennsylvania Class Member their earned wages for all hours worked. 43 Pa. C.S. § 260.3.

120. National Hood violated the PMWA by failing to make, keep, and preserve accurate time records with respect to Pantelic and the Pennsylvania Class Members sufficient to determine their wages and hours in violation of 43 Pa. C.S. § 333.108.

121. National Hood violated the PWPCL by failing to provide lawful notice to the Plaintiffs and the Pennsylvania Class members of its policies and practices or of any change in its policies and practices concerning compensation. 43 Pa. C.S. § 260.4.

122. The PMWA does not incorporate the FLSA or the Portal-to-Portal Act. *In re Amazon.com, Inc.*, 255 A.3d 191 (Pa. 2021). The PMWA intentionally provides workers with greater wage protections than the FLSA, reflecting the commonwealth's strong public policy objective of protecting workers' rights to adequate compensation for all hours worked. *Id.*

123. Pantelic and each Pennsylvania Class Member are entitled to pay for all hours worked and for overtime pay for all hours worked over 40 in a single workweek under the PWPCL and PMWA.

124. National Hood owes Pantelic and each Pennsylvania Class Member compensation at their regular rate for all off-the-clock work performed up to 40 hours per week under the PWPCL and PMWA.

125. National Hood owes Pantelic and the Pennsylvania Class Member compensation at one and one-half times their regular rate for all off-the-clock work performed over 40 hours per week

126.    Pantelic and each Pennsylvania Class Member seek unpaid wages, liquidated damages, and penalties as provided by the PWPCL.

127.    Pantelic and each Pennsylvania Class Member seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, liquidated damages, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

128.    Pantelic and each Pennsylvania Class Member also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by National Hood, as provided by the PWPCL and PMWA.

## JURY DEMAND

1.    Pantelic demands a trial by jury.

## PRAYER

2.    Pantelic prays for relief as follows:

a.    An Order designating the Putative Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    For an Order pursuant to Section 16(b) of the FLSA finding National Hood liable for unpaid back wages due to Pantelic and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

c.    An Order certifying a Rule 23 class action on behalf of current and former hourly employees working for or on behalf of National Hood in Pennsylvania, and/or who were based out of Pennsylvania while working for National Hood at any time during the last 3 years;

14

d.    Judgment awarding Pantelic and the Putative Class Members all unpaid regular rate compensation, unpaid overtime compensation, and other damages and penalties available under the FLSA,PMWA, and PWPCL;

e.    For an Order awarding Pantelic and the Putative Class Members their costs of this action as provided by the FLSA, PMWA, and PWPCL;

f.    For an Order awarding Pantelic and Putative Class Members their reasonable attorneys' fees and expenses as provided by the FLSA,PMWA, and PWPCL;

g.    For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest; and

h.    For an Order granting such other and further relief as may be necessary and appropriate.

i.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
**Michael A. Josephson**
PA Bar 308410
**Andrew W. Dunlap**
PA Bar 241078444
**Rochelle D. Prins***
AZ Bar No. 031393
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rprins@mybackwages.com
*Pro Hac Vice Application Forthcoming*

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

**Joshua P. Geist**
PA ID No. 85745
**William F. Goodrich**
PA ID No. 30235
**GOODRICH & GEIST PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
412-766-1455 – Telephone
412-766-0300 – Facsimile
josh@goodrichandgeist.com
bill@goodrichandgeist.com


**ATTORNEYS FOR PLAINTIFF
& PUTATIVE CLASS MEMBERS**